UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TORRENCE BATES,

                Plaintiff,

v.                                 Case No. 3:23-cv-1035-MMH-LLL

SERGEANT DEEN, et al.,

                Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Torrence Bates, an inmate in the custody of the Florida Department of Corrections (FDC), initiated this action on August 18, 2023,[1] by filing a Complaint for Violation of Civil Rights (Doc. 1).[2] He is proceeding on a Fourth Amended Complaint (FAC; Doc. 37). In the FAC, he names the following Defendants: (1) Sergeant Deen, (2) Sergeant Jean, (3) Officer Johnson, (4) Officer Duckett, and (5) Nurse C. Robinson. See FAC at 2–4. Bates raises claims of excessive force, deliberate indifference to his serious medical needs, and retaliation. See id. at 3.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

This matter is before the Court on Defendants Sergeant Deen, Sergeant Jean, Officer Johnson, and Officer Duckett's (collectively Corrections Defendants) Motion to Dismiss. See Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint (Motion; Doc. 40). In support of the Motion, the Corrections Defendants have submitted exhibits. See Docs. 40-1 through 40-10. Bates filed a response in opposition to the Motion, see Plaintiff's Response in Opposition to Defendant's [sic] Motion to Dismiss Plaintiff's Fourth Amended Complaint (Response; Doc. 41), and also submitted exhibits, see Doc. 41-1. The Motion is ripe for review.

## II. Bates's Allegations[3]

Bates asserts that on April 23, 2023, at approximately 12:15 p.m., several officers entered his cell at Columbia Correctional Institution. See FAC at 6. According to Bates, Sergeant Deen ordered him to place his hands behind his back so Sergeant Deen could handcuff him. See id. Bates complied; however, Sergeant Deen grabbed his face and squeezed it extremely hard. See id. at 7. Bates alleges that the Corrections Defendants then "converged upon [him], employed take down maneuvers to the floor upon [his] face." Id. The

---

[3] In considering the Corrections Defendants' Motion, the Court must accept all factual allegations in the FAC as true, consider the allegations in the light most favorable to Bates, and accept all reasonable inferences that can be drawn from such allegations. See Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the FAC, and may well differ from those that ultimately can be proved.

Corrections Defendants piled on top of Bates and began to strike him with closed fists. See id. Sergeant Deen placed his knee on the side of Bates's neck, thereby restricting Bates's breathing. See id. Officer Johnson sprayed chemical agents in Bates's face and struck him repeatedly. See id. Officer Duckett struck Bates with his radio while yelling, "I'll kill you mother******." Id. According to Bates, the use of force was excessive because he complied with all orders from the Corrections Defendants. See id.

Bates further alleges that when he arrived in confinement after the incident, Nurse Robinson asked him if he had any complaints. See id. at 8. Bates showed Nurse Robinson his "right eye/side of [his] face which was grossly swollen/disfigured and advised her that [he] had a series of other ailments/injuries . . . ." Id. Bates asserts that Nurse Robinson "did not provide [him] with the care envisioned, but rather, advised security that [he] was free for them to do as they pleased with [him], and placed [him] in a cell." Id. Bates also asserts that Nurse Robinson falsified the "emergency room record form," stating that she observed no physical injuries. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see

also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and

original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

### IV. Summary of the Corrections Defendants' Arguments

In their Motion, the Corrections Defendants ask the Court to dismiss the FAC because: (1) the holding in Heck v. Humphrey, 512 U.S. 477 (1994), bars Bates's claim; (2) Bates failed to exhaust his administrative remedies; (3) the Corrections Defendants are entitled to Eleventh Amendment immunity; (4)

5

Bates is not entitled to punitive damages; and (5) Bates is not entitled to injunctive relief. See generally Motion.

## V. Exhaustion of Administrative Remedies

### A. Prison Litigation Reform Act (PLRA) Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[4] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). Therefore, the Court turns first to the question of whether Bates properly exhausted his administrative remedies. It is well settled that the PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Bates, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[5] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies

---

[5] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, the Corrections Defendants bear "the burden of proving that [Bates] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082

> (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in <u>Turner</u>, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record.[6] <u>Bryant</u>, 530 F.3d at 1376; <u>see also</u> <u>Jenkins v. Sloan</u>, 826 F. App'x 833, 838–39 (11th Cir. 2020). In evaluating whether Bates has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218

---

[6] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. <u>See</u> <u>Kinard v. Fla. Dep't of Corr.</u>, No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Bates that he had forty-five days to respond to any motion to dismiss. <u>See</u> Notice to Pro Se Litigant (Doc. 6) at 3. Bates responded to the Corrections Defendants' Motion and addressed the exhaustion argument by relying on grievance records that he attached to his Response. <u>See</u> Response at 5–9, 11–12; Doc. 41-1 at 1–14. He does not request discovery or suggest that he needs any additional information to respond to the Motion. As such, Bates has received notice and an opportunity to develop the record on exhaustion.

(stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for

10

the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not

11

acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

The Corrections Defendants argue that Bates failed to properly complete the FDC's three-step grievance process before he filed the initial Complaint on August 18, 2023. <u>See</u> Motion at 9–14. In support of their assertion, the Corrections Defendants submit declarations from Jacqueline Spanios, a Correctional Officer-Grievance Coordinator at Suwannee Correctional Institution, and Lawanda Sanders, FDC Operation Analyst. <u>See</u> Docs. 40-3, 40-5.

In her declaration, Spanios states that between April 23, 2023, and August 25, 2023, Bates had no approved informal or formal grievances "related to an incident on April 23, 2023, involving [the Corrections Defendants]." Doc. 40-3 at 1. The grievance log attached to Spanios's declaration confirms that Bates had no approved informal or formal grievances during the relevant time. <u>See</u> Doc. 40-4. In her declaration, Sanders states that between April 23, 2023, and August 23, 2023, Bates filed four grievance appeals related to the April 23, 2023 incident. <u>See</u> Doc. 40-5 at 1. All of those grievances were returned without action "for not being written in compliance with FDC Chapter 33-103 Rules." <u>Id.</u> As discussed below, the grievance log and relevant grievance appeals

attached to Sanders's declaration confirm her assertions. See Doc. 40-6 at 1–2.

On May 19, 2023, Bates submitted a grievance appeal complaining about a disciplinary report from the incident for possession of narcotics.[7] See Doc. 40-7 at 2. He argued the narcotics allegedly found on him "were not sent to outside labs for professional testing," and "there was no property receipt of such substance conducted." Id. Bates asked the FDC to remove the disciplinary report from his record. See id. He also noted that he had submitted a formal grievance but had received neither a receipt nor a response. See id.

The FDC Secretary returned his appeal without action, stating:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing the level of the grievance procedure is not acceptable.
>
> Your issue regarding the "grievance procedure" is a separate issue and should be grieved as such, also, being initiated at the appropriate level.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
> Based on the foregoing information, your appeal

---

[7] Bates received two disciplinary reports from the April 23, 2023 incident: disobeying lawful commands and possession of narcotics. See Docs. 40-1, 40-2.

13

is returned without action.

Id. at 1.

On June 16, 2023, Bates submitted another grievance appeal complaining about a disciplinary report from the incident for disobeying lawful commands. See Doc. 40-8 at 2. Bates argued the statement of facts on the report was insufficient, and he requested the report be removed from his record. See id. at 2–3. He again alleged that he had submitted a formal grievance but never received a response. See id. at 2.

The FDC Secretary returned his appeal without action, stating:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing the level of the grievance procedure is not acceptable.
>
> Your issue regarding the "grievance procedure(s)" is a separate issue and should be grieved as such, also, being initiated at the appropriate level.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
> Based on the foregoing information, your appeal is returned without action.

Id. at 1.

14

On that same day, Bates submitted a third grievance appeal about the use of force on April 23, 2023, and he stated that he feared reprisal. See Doc. 40-9 at 2. The FDC Secretary responded:

> Note: There is no longer a sensitive category of grievance/appeal.
>
> Your request for administrative appeal is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, which states, "each grievance must address only one issue or complaint." Your current request for administrative appeal addresses more than one issue and/or complaint.
>
> Note: This grievance is not accepted as a grievance of reprisal.
>
> The grievance/appeal process is not to be utilized for correspondence purposes.
>
> The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> Based on the foregoing information, your grievance appeal is being returned.

Id. at 1.

Last, Bates submitted a grievance appeal concerning inadequate medical care for torn ligaments in his left leg. See Doc. 40-10 at 2. The FDC Secretary

responded as follows:

> Your request for Administrative Remedy or Appeal has not been filed in compliance with Chapter 33-103.006, Inmate Grievance Procedure. You did not provide this office with a copy of the formal grievance filed at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable.
>
> If you feel you need medical attention, contact the institutional medical department via the sick call/emergency process.
>
> The institution should be given the opportunity to respond to your issue.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure.
>
> Based on the foregoing information, your appeal is returned without action.

Id. at 1.

Bates argues that he submitted grievances about the use of force and properly proceeded to the appellate level when he did not receive a response. See Response at 5–6. Additionally, he contends, "The fact that none of [Bates's] grievances had been granted does not take away from the fact that [] [Bates] had in fact exhausted the grievance procedure set forth in Chapter 33." Id. at 11–12. According to Bates, he submitted an informal grievance complaining

16

about Sergeant Dean that predates the incident described in the FAC, as well as an informal grievance about the incident that was denied. <u>See</u> Doc. 41-1 at 1, 3. He then filed two formal grievances for which he never received receipts or responses. <u>See</u> <u>id.</u> at 4–5. As such, Bates proceeded to the appellate level, where his grievances were returned without action. <u>See</u> <u>id.</u> at 6–8, 11–14. He also appears to allege administrative remedies were unavailable due to the threats of corrections officers. <u>See</u> Response at 16.

### D. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motion and Response and accept as true Bates's allegations. <u>See</u> <u>Whatley</u>, 802 F.3d at 1209. If Bates's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. <u>See</u> <u>id.</u>

Accepting Bates's view of the facts as true, the Court finds dismissal of the claims against the Corrections Defendants for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process and considers the Corrections Defendants' arguments about exhaustion and makes findings of fact.

### E. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the <u>Turner</u>

analysis. Here, the record before the Court establishes that Bates failed to properly exhaust his administrative remedies because he did not comply with the FDC's grievance procedure. While he submitted various appellate grievances, the FDC Secretary returned them without action because he either: (1) did not include his formal grievance as required nor did he provide a valid reason for bypassing previous levels of review, or (2) addressed more than one issue or complaint. See Docs. 40-7 at 1, 40-8 at 1, 40-9 at 1, 40-10 at 1; see Fla. Admin. Code R. 33-103.014(1)(f)-(g). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Therefore, Bates did not properly exhaust his administrative remedies because his grievances about the incident failed to comply with FDC procedural requirements.[8]

Notably, in response to one of Bates's appeal grievances, the FDC Secretary returned the grievance without action and noted the "subject of [Bates's] grievance was previously referred to the Office of the Inspector General." Doc. 40-9 at 1. However, this prior referral to the Office of the Inspector General (OIG) still fails to satisfy the exhaustion requirement. Bates

---

[8] Even assuming Bates filed formal grievances to which he did not receive responses, Bates points to no evidence he provided the FDC Secretary with copies of the formal grievances that he submitted at the institutional level and that he now attaches to his Response. See Doc. 41-1 at 4–5.

provides no evidence to suggest that the OIG's investigation resulted from Bates submitting a grievance. Therefore, the OIG's investigation is not relevant to the issue of exhaustion. See Fleming v. Espino, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (finding that plaintiff had failed to exhaust his remedies since "[t]here is no evidence supporting even an inference that the OIG's investigation was a result of Fleming filing a grievance"); see also Hersh v. Scott, No. 3:22-cv-408-BJD-LLL, 2023 WL 2242551, at *4 (M.D. Fla. Feb. 27, 2023) (finding OIG's investigation was "not relevant to the exhaustion analysis because there is no indication that investigation resulted from Plaintiff having filed a proper grievance"). To the extent he argues that the OIG investigation rendered pursuit of the grievance process futile, such an argument is contrary to Eleventh Circuit law. See, e.g., Varner v. Shepard, 11 F.4th 1252, 1264 (11th Cir. 2021) (recognizing the Eleventh Circuit has declined to create a futility exception to the PLRA in rejecting plaintiff's argument that his administrative remedies were exhausted because referral to an internal investigation unit had already occurred—the only relief that plaintiff could have received had he properly followed the Georgia Department of Corrections' administrative process).

Insofar as Bates contends the grievance process was unavailable to him because prison officials threatened him, he is still not entitled to relief. Bates

19

specifically asserts that following the April 23, 2023 incident, the Corrections Defendants "issued a series of threats upon [his] life/safety, where [sic] [he] to tell anyone of the events just occurring . . . ." FAC at 8. The Eleventh Circuit has recognized that "a prison official's serious threats of substantial retaliation against an inmate" for filing a grievance in good faith can make administrative remedies "unavailable." <u>Turner</u>, 541 F.3d at 1085. In doing so, the court explained that a prison official's serious threats of substantial retaliation will excuse the exhaustion requirement if two conditions are met:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

<u>Id.</u> In determining whether a plaintiff has made this showing, a court may "consider[] [a plaintiff's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or . . . destroy his grievances." <u>Whatley v. Smith</u>, 898 F.3d 1072, 1083 (11th Cir. 2018). "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to <u>Turner</u>, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him."

Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (quoting Turner, 541 F.3d at 1085); id. at 1356 n.14 ("But once the [prison official] has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (quoting Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018))).

Here, the Corrections Defendants have established that the FDC has an administrative grievance process and that Bates failed to proceed properly through the FDC's three-step grievance process. Therefore, the burden shifts to Bates to "demonstrate that the [FDC's] grievance procedure was 'subjectively' and 'objectively' unavailable to him." Id. at 1356. Assuming the vague threats Bates relies on would deter a reasonable inmate from using the grievance process, they did not actually deter Bates because he filed numerous grievances following the incident. See Docs. 40-3 through 40-10. And, as he alleges, he filed two formal grievances about the incident. See Doc. 41-1 at 4–5. Therefore, Bates was not actually deterred from exercising his administrative remedy rights. Considering the above, the Corrections Defendants' Motion to Dismiss is due to be granted because Bates failed to exhaust his administrative remedies.[9]

---

[9] Because the Court has determined that Bates did not exhaust his administrative remedies using the FDC's three-step grievance process, the Court will not address the Corrections Defendants' remaining arguments.

# VI. Sua Sponte Frivolity Review

The Court is obligated to conduct an independent frivolity review of Bates's deliberate indifference claim against Nurse Robinson. The Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834). As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has

instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844-45.

Wade v. McDade, 106 F.4th 1251, 1261 (11th Cir. 2024) (enumeration and emphasis omitted);[10] see Stalley v. Cumbie, 124 F.4th 1273, 1283 (11th Cir. 2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff must show that he suffered "an objectively serious medical need," and that the defendant acted with deliberate indifference to that need, meaning that the

---

[10] For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence" standard in determining whether an official acted with deliberate indifference to an inmate's serious medical need. Wade, 106 F.4th at 1255. In Wade, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the criminal law." Id. at 1253. The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Id. at 1265 (Jordan, J., concurring).

defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotations and citations omitted)).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Thus, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted).

Here, Bates's allegations of inadequate medical care do not amount to a constitutional violation. Bates's claims are conclusory in nature and devoid of

facts that would allow the Court to draw a reasonable inference that Nurse Robinson violated his constitutional rights. The crux of Bates's claim is that Nurse Robinson failed to provide the course of medical treatment that Bates considered appropriate for his swollen right eye. The decision as to the type of treatment provided to a prisoner is a "classic example of a matter for medical judgment," that does not provide a basis for Eighth Amendment liability. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.").

To the extent Bates alleges Nurse Robinson falsified medical records, he fails to state a claim for relief. Bates asserts that Nurse Robinson falsely stated he sustained no injuries on the emergency room record form. See FAC at 8. However, Nurse Robinson makes no such representation on the form that Bates attached to the FAC. See Doc. 37-1 at 1. Regardless, the falsification of medical records by itself does not state an independent cause of action. The Court will dismiss Bates's claim against Nurse Robinsons as frivolous pursuant to 28 U.S.C. § 1915A.

Accordingly, it is now **ORDERED:**

1.    Defendants Deen, Jean, Johnson, and Duckett's Motion to Dismiss (Doc. 40) is **GRANTED to the extent** that they seek dismissal of the claims

against them for Bates's failure to exhaust his administrative remedies. In all other respects, the Motion is denied.

2.     Bates's claim against Defendant Robinson is **DISMISSED** pursuant to 28 U.S.C. 1915A(b).

3.     Bates's Motion for Entry of Default (Doc. 44), Motion for Entry of Default Judgment (Doc. 46), and Motion to Hold Defendant in Contempt (Doc. 48) are **DENIED as moot**.

4.     Bates's Fourth Amended Complaint (Doc. 1) is **DISMISSED without prejudice** as to all Defendants.

5.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August, 2025.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 7/29
c:     Torrence Bates, #R65183
       Counsel of record

26